IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 06-00154-01-CR-W-FJG |
| RONALD G. PARK, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Before the court is defendant's motion to suppress statements on the ground that he was in custody and was interrogated without being advised of his Miranda rights. I find that defendant was not in custody and was not being interrogated at the time he made the statement, "There are a few guns in the house that my son left there Sunday." Therefore, defendant's motion to suppress that statement should be denied.

*I.   BACKGROUND*

On the morning of April 12, 2006, agents went to defendant's residence to execute a search warrant. When defendant was observed leaving his residence, he was followed by law enforcement a short distance until he stopped in a nearby cemetery. Special Agent Darrell Withem stopped and introduced himself to defendant. He told

defendant he had a federal search warrant for defendant's residence.  Defendant asked what for, and Special Agent Withem stated, "guns".  Defendant then stated that there were guns in the house that had been left there by defendant's son.  Multiple firearms were seized from the residence.

The following day, a criminal complaint was filed charging defendant with possessing firearms after having been convicted of a felony.  On April 19, 2006, an indictment was returned charging defendant with possession of 23 firearms after having been convicted of a felony. Defendant filed the instant motion to suppress on June 12, 2006 (document number 28).  The government filed a response to the motion on June 22, 2006 (document number 30).

On July 13, 2006, I held an evidentiary hearing on defendant's motion to suppress.  The government appeared by Assistant United States Attorney Christina Tabor.  The defendant was present, represented by Justin Johnston.  The government called Special Agent Darrell Withem, Bureau of Alcohol, Tobacco, Firearms, and Explosives, as a witness. In addition, the following exhibits were marked and admitted into evidence:

P. Ex. 1   Application and affidavit for search warrant
           for defendant's residence

P. Ex. 2   Search warrant for defendant's residence

P. Ex. 3   Search warrants for three of defendant's
           vehicles

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On April 7, 2006, law enforcement obtained search warrants to search defendant's residence and four of his vehicles (Tr. at 12-13).

2. On April 12, 2006, Special Agent Darrell Withem went to the residence at 1475 Southwest 50 Road in Osceola, Missouri (Tr. at 13). He was accompanied by Special Agents Tim Canon, Nathaniel Hummel, Charlie Backer, and Ben Scoll; Task Force Officers Chris Gilio, Darrell Reach, and Wayne Hartley; and St. Clair County Deputies Mulaney and Gardner (Tr. at 14). Special Agent Withem, Special Agent Hummel and Task Force Officer Gilio went into a wooded area across the road from the residence at approximately 5:00 a.m. to establish surveillance (Tr. at 14).

3. At approximately 8:40 a.m., Special Agent Hummel observed defendant heading down his driveway on a four-

3

wheel-drive all-terrain vehicle ("ATV") (Tr. at 14-15). Defendant was observed riding into a cemetery that was less than a quarter of a mile from his residence (Tr. at 15). Defendant said later that he had gone to the cemetery to visit the grave of a relative who had passed away a week or so earlier (Tr. at 27).

    4.   Special Agent Withem went to the cemetery with Deputies Mulaney and Gardner (Tr. at 15). The deputies, in uniform, were in a marked vehicle and Withem was in a government issued Impala (Tr. at 15, 16). Defendant pulled onto the grass in his ATV and the marked police car pulled up next to him (Tr. at 16). The officers did not pull defendant over, rather he stopped in the cemetery on his own (Tr. at 27).

    5.   Special Agent Withem had entered the cemetery from the other direction and pulled up in front of the police car (Tr. at 16). Special Agent Withem walked over to defendant and introduced himself (Tr. at 16-17). Special Agent Withem was dressed in jeans and an ATF polo shirt (Tr. at 17). Defendant was standing next to his ATV, and the two men shook hands (Tr. at 17). Special Agent Withem told defendant he had federal search warrants for defendant's property (Tr. at 18). Defendant asked what for, and Special

4

Agent Withem said the warrants were for firearms and narcotics (Tr. at 18-19). Defendant said there were a few firearms at his residence that his son had left there on Sunday (Tr. at 19, 32).

    6. Defendant was not handcuffed, his movement was not restricted by the officers, and no one had a gun drawn when defendant made that statement (Tr. at 19).

    7. Special Agent Withem asked defendant if he would return to the residence with them in case they needed assistance gaining entry into anything (Tr. at 19-20). Defendant asked if he could take his ATV back to the residence, and Special Agent Withem stated that would not be a problem, that the officers would follow him to the residence (Tr. at 20, 32, 40).

    8. Defendant was unable to get his ATV started, so he got into the back of a patrol car and rode over to his house (Tr. at 21, 32). When they arrived at the residence, defendant initially sat on the back of a pick-up truck with the tailgate down (Tr. at 35). However, before the search of the residence began, defendant kept trying to enter the house, saying he had to use the bathroom (Tr. at 22). He was told he would have to wait until the house was secured and then he could go in (Tr. at 22). Defendant continued to

5

make movements toward the door to go in, so he was placed in handcuffs for officer safety (Tr. at 22).

 9. The search warrants were eventually executed, and the officers found firearms in the residence and a gun safe in a closet off the living room (Tr. at 23, 25, 37). Defendant was placed under arrest and advised of his <u>Miranda</u> rights (Tr. at 23, 25).  Defendant waived his <u>Miranda</u> rights and then was asked about the gun safe (Tr. at 23, 25). Defendant said he did not have access to it, that his son was the one who uses it (Tr. at 23).  Defendant said he bought the gun safe in 1998 and stored coins and arrowheads in there (Tr. at 23).  The officers asked defendant if he had a key to the safe and he said he did not (Tr. at 23).

 10. During the search of the house, an officer found a key for a gun safe hanging on a key rack next to the refrigerator (Tr. at 23, 25).  They asked defendant if he had the combination to the safe (as it required a key and a combination), but he said he did not (Tr. at 23-24).

 11. The officers spoke by telephone with defendant's son, Ronnie Park (Tr. at 24).  Defendant had said that his son Ronnie was the only one who ever used the safe (Tr. at 24). Ronnie Park provided a combination to the safe, but it did not work (Tr. at 24).  The offices called Ronnie Park

6

again and he provided another combination which was just slightly different from the first, but that combination did not work either (Tr. at 24).

12. Believing the gun safe may contain guns and that the search warrant authorized a search of the gun safe, the officers had the United States Attorney's Office fax a copy of the search warrant to Browning, the manufacturer of the safe (Tr. at 24, 39). Browning provided the combination to the safe (Tr. at 24). The agents opened the safe and located the remaining firearms.

### *III. DEFENDANT'S STATEMENT*

Defendant argues that his statement must be suppressed because he was not advised of his Miranda rights.

Miranda v. Arizona, 384 U.S. 436 (1966), requires that a suspect be advised of (among other things) his right to remain silent and to have an attorney with him during questioning. Law enforcement officers are required to advised a suspect of his Miranda rights only if custodial interrogation takes place. Id. Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way. Id. at 429.

### A. CUSTODY

In determining whether a suspect is "in custody," courts examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a "reasonable person in the suspect's position would have understood his situation" to be one of custody. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). The totality of the circumstances are considered. United States v. Carter, 884 F.2d 368 (8th Cir. 1989).

The Eighth Circuit has outlined six factors to be considered in determining whether a suspect is "in custody" for Miranda purposes:

> Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest; whether the suspect possessed unrestrained freedom of movement during the interview; whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; whether strong arm tactics or deceptive stratagems were employed during questioning; whether the atmosphere of the questioning was dominated by law enforcement officers; and whether the suspect was placed under arrest at the termination of the questioning.

United States v. Czichray, 378 F.3d 822, 831 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005). The affirmative presence of one or more of the first three factors mitigates

8

the existence of custody at the time of the questioning. United States v. McKinney, 88 F.3d 551, 554 (8th Cir. 1996). The presence of one or more of the last three facts during questioning will tend to support a finding of custody. Id. A finding of custody does not, however, have to be supported by all six factors. Id.

Applying the above factors to the facts of this case, I find that defendant was not "in custody" for Miranda purposes.

### 1. ADVICE GIVEN BY OFFICERS

The most obvious and effective means of demonstrating that a suspect has not been taken into custody or otherwise deprived of freedom of action is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will. Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Miranda v. Arizona, 384 U.S. at 444. Although failure to advise a suspect that he is free to leave may suggest restraint, the absence of a statement suggesting that a suspect is not free to leave suggests freedom of movement. United States v. Lanni, 951 F.2d 440, 442 (1st Cir. 1991).

In this case, defendant was in a cemetery when the law enforcement officers drove up. Special Agent Withem

9

introduced himself and shook defendant's hand. He stated that they had a search warrant for defendant's residence, defendant asked what for, and Special Agent Withem said the warrants were for firearms and narcotics. Defendant was not advised that he was not free to leave, and none of the officers or agents present demonstrated any indication that defendant was being taken into custody.[1] This factor supports a finding that defendant was not in custody.

## 2. *RESTRAINT*

The Supreme Court has held that a suspect is not in custody when he is permitted to move about unaccompanied. Beckwith v. United States, 425 U.S. 341, 343 (1976). In this case, defendant's freedom of movement was not restrained. He was not placed in handcuffs, Special Agent Withem merely shook his hand and did not indicate in any way that defendant was being arrested. This factor supports a finding that defendant was not in custody.

## 3. *VOLUNTARILY ACQUIESCING TO QUESTIONING*

The third factor is whether the interview was instigated by authorities or whether the suspect initiated

---

[1] The fact that police granted defendant's request to go to his residence on his ATV supports this finding, although that occurred after defendant's statement.

10

contact or voluntarily acquiesced to official questions. Because the Court in <u>Miranda</u> was concerned with questioning initiated by law enforcement officers, custody is often found lacking where the suspect voluntarily acquiesced to questioning.  <u>See</u> <u>Leviston v. Black</u>, 843 F.2d 302, 304 (8th Cir.) (no custody where suspect initiated inquiry by voluntarily speaking with investigators), <u>cert</u>. <u>denied</u>, 488 U.S. 865 (1988).

In this case, defendant voluntarily spoke with Special Agent Withem.  Special Agent Withem stated that there was a search warrant for defendant's residence, and from that point on, the conversation consisted of defendant's questions and Special Agent Withem's answers.  This factor supports a finding that defendant was not in custody.

### *4. TACTICS USED*

Because strong-arm tactics are more generally associated with formal arrest than with an informal encounter with police, the use of such tactics normally supports a finding of custody.  <u>United States v. Griffin</u>, 922 F.2d 1343, 1351 (8th Cir. 1990).  In this case, there was no evidence that any strong-arm tactics were used.

11

*5. DOMINATION OF INTERVIEW*

An interrogation which occurs in an atmosphere dominated by the police is more likely to be viewed as custodial than one which does not. Berkemer, 468 U.S. at 438. The question is whether the entire context of the questioning, including such considerations as place and length of the questioning, whether the police assume control of the place of questioning, and whether they dictate the course of conduct followed by the suspect or other persons present at the scene, demonstrates that the course of the investigation was police dominated. United States v. Griffin, 922 F.2d at 1352; United States v. Longbehn, 850 F.2d 450, 453 (8th Cir. 1988). When a suspect is not subject to any sort of police commands or dictations, custody is usually found lacking. United States v. Jones, 630 F.2d 613, 616 (8th Cir. 1980).

In this case, defendant was subject to no police commands or dictations. He encountered them in a public place, Special Agent Withem introduced himself and shook defendant's hand. Defendant was not given any commands or dictations by any law enforcement officer.

12

## 6. WHETHER ARRESTED AT CONCLUSION OF INTERVIEW

Defendant was not arrested after his statement about having guns in his residence.

## 7. CONCLUSION

The "in custody" requirement is not satisfied merely because the person interviewed is the focus of a criminal investigation. Beckwith v. United States, 425 U.S. 341 (1976). Defendant bears the burden of proving that he was in custody at the time the statements were made. United States v. Davis, 792 F.2d 1299, 1308 (5th Cir.), cert. denied, 479 U.S. 964 (1986); United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984); United States v. Grissom, 825 F. Supp. 949, 954 (D. Kan. 1993). I find that defendant has failed to met this burden. All of the factors discussed above support the conclusion that defendant was not in custody when he made his statement. Therefore, because defendant was not in custody, Miranda warnings were not required.

## B. INTERROGATION

The requirement that a person in police custody be advised of his right to remain silent and right to an attorney applies only if the person is being interrogated. United States v. Koontz, 143 F.3d 408, 410 (8th Cir. 1998).

13

Even if defendant had been in custody, I find that defendant was not being interrogated at the time he made the statement.

In Miranda, the Court referred to "interrogation" as actual questioning initiated by law enforcement officers. 384 U.S. at 444. The Supreme Court has since clarified that definition, finding that the "goals of the Miranda safeguards could be effectuated if those safeguards extended not only to express questioning, but also to 'its functional equivalent.'" Arizona v. Maura, 481 U.S. 520, 526 (1987). In Rhode Island v. Innis, 446 U.S. 291 (1980), the Court defined the phrase "functional equivalent" of express questioning to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

Voluntary statements made by a suspect, not in response to interrogation, are not barred by the Fifth Amendment and are admissible with or without the giving of Miranda warnings. United States v. Hatton, 68 F.3d 257, 262 (8th Cir. 1995). In this case, it is clear that defendant's statement was a voluntary statement, not in response to

14

interrogation.  At the time defendant stated that there were guns in his house, Special Agent Withem was answering defendant's questions, not asking questions.  Therefore, there can be no doubt that defendant's statement was not the product of express questioning or its functional equivalent.

Because defendant was not being questioned by police, they were not required to advise him of his <u>Miranda</u> rights.

### *IV. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in section III, I conclude that the statement made by defendant that there were guns in his residence that had been left there by his son was made at a time when defendant was not in custody and was not in response to any questioning by law enforcement. Therefore, law enforcement officers were not required to advised defendant of his <u>Miranda</u> rights.  Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress his statement.

15

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

                                  */s/ Robert E. Larsen*
                                  ROBERT E. LARSEN
                                  United States Magistrate Judge

Kansas City, Missouri
July 31, 2006